UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 23-cv-4971 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| ARCONIC CORPORATION, FREDERICK | : **SECURITIES EXCHANGE ACT OF** |
| A. HENDERSON, WILLIAM F. AUSTEN, | : **1934** |
| CHRISTOPHER L. AYERS, MARGARET S. | : |
| BILLSON, JACQUES CROISETIERE, | : **JURY TRIAL DEMANDED** |
| ELMER L. DOTY, CAROL S. EICHER, | : |
| ELLIS A. JONES, TIMOTHY D. MYERS, E. | : |
| STANLEY O'NEAL, and JEFFREY | : |
| STAFEIL, | : |
| | : |
| Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Arconic Corporation ("Arconic or the "Company") and the members Arconic's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Arconic by affiliates of Apollo Global Management, Inc. ("Apollo").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on June 2, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Arsenal AIC MergeCo Inc. ("Merger Sub"), a wholly owned subsidiary of Arsenal AIC Parent LLC ("Parent"), will merge with and into Arconic, with Arconic surviving as a wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 4, 2023 (the "Merger Agreement"), each Arconic stockholder will receive $30.00 in cash (the "Merger Consideration") for each Arconic share owned.

3. As discussed below, Defendants have asked Arconic's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Evercore Group L.L.C. ("Evercore" and together with Goldman Sachs, the "Financial Advisors") in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Arconic's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Arconic stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Frederick A. Henderson has served as a member of the Board since 2020 and is the Chair of the Board.

11. Individual Defendant William F. Austen has served as a member of the Board since 2020.

12. Individual Defendant Christopher L. Ayers has served as a member of the Board since 2020.

13. Individual Defendant Margaret S. Billson has served as a member of the Board since 2020.

14. Individual Defendant Jacques Croisetiere has served as a member of the Board since 2020.

15. Individual Defendant Elmer L. Doty has served as a member of the Board since 2020.

16. Individual Defendant Carol S. Eicher has served as a member of the Board since 2020.

17. Individual Defendant Ellis A. Jones has served as a member of the Board since 2022.

18. Individual Defendant Ellis A. Jones has served as a member of the Board since 2020.

19. Individual Defendant Timothy D. Myers has served as a member of the Board since 2020 and is the Company's Chief Executive Officer.

20. Individual Defendant E. Stanley O'Neal has served as a member of the Board since 2020.

21. Individual Defendant Jeffrey Stafeil has served as a member of the Board since 2020.

22. Defendant Arconic is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 201 Isabella Street, Suite 400, Pittsburgh, Pennsylvania 15212-5872. The Company's stock trades on the New York Stock Exchange under the symbol "ARNC."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Individual Defendants" or the "Board."

24. The defendants identified in paragraphs 10-22 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. **The Proposed Transaction**

25. Arconic manufactures and sells fabricated aluminum sheets, plates, extrusions, and architectural products and systems in the United States and internationally. It operates through three segments: Rolled Products, Building and Construction Systems, and Extrusions. The Rolled Products segment provides a range of aluminum sheet and plate products for aerospace, ground transportation, packaging, building and construction, and industrial products; and roofing, architectural composite panels, ventilated facades and ceiling panels, spacers, culvert pipes, and gutters for building and construction markets. The Building and Construction Systems segment provides various products and building envelope solutions, such as entrances, curtain walls, windows, composite panels, and coil coated sheets for fabricators and glazing subcontractors under the Kawneer, Reynobond, and Reynolux brands. The Extrusions segment offers extruded products, such as automotive shapes, aerospace shapes, seamless tubes, hollows, mortar fins, and high strength rods and bars for ground transportation, aerospace, and industrial markets. The Company offers its products directly to customers, as well as through distributors. The Company was formerly known as Arconic Rolled Products Corporation and changed its name to Arconic Corporation in April 2020. Arconic was founded in 1888 and is headquartered in Pittsburgh, Pennsylvania.

26. On May 4, 2023, the Company announced the Proposed Transaction:

> PITTSBURGH--(BUSINESS WIRE)-- Arconic Corporation (NYSE: ARNC) ("Arconic" or the "Company") announced today that it has entered into a definitive agreement to be acquired by funds managed by affiliates of Apollo Global Management, Inc. (NYSE: APO) ("Apollo"), in an all-cash transaction that values the Company

at an enterprise value of approximately $5.2 billion. The transaction includes a minority investment from funds managed by affiliates of Irenic Capital Management ("Irenic").

The agreement provides that Arconic shareholders will receive $30.00 per share in cash, which represents a premium of approximately 36% to the Company's undisturbed closing stock price on February 27, 2023. Upon completion of the transaction, Arconic's shares will no longer trade on the New York Stock Exchange, and Arconic will become a private company.

"This transaction represents a realization of value for Arconic shareholders at a meaningful premium and enables the Company to execute its long-term strategic vision. We are pleased to reach this agreement with Apollo," said Fritz Henderson, Chairman of the Arconic Board of Directors. "The Board decided to approve this transaction after thorough and thoughtful review of a range of value creation opportunities for shareholders."

Tim Myers, Chief Executive Officer, said, "In the more than three years since we became a standalone company, we have shown the capabilities and potential of Arconic's employees and assets. Our unique product portfolio in an industry with significant potential for growth across the markets we serve positions us to deliver substantial value to our customers and the end users of our products. This transaction will provide Arconic with the backing of one of the world's premier investment firms and will allow us to leverage Apollo's industry expertise and relationships to pursue our long-term strategic goals. I look forward to working with their team to create opportunities for our employees and provide value to our customers."

"Arconic's talented management team and employees operate a set of premier global assets serving markets that are growing. We are committed to investing significant capital in the Company to secure its competitive position and world-class product offering to continue building on Arconic's journey," said Gareth Turner, Partner at Apollo Global Management.

Strategic investments are expected to include:

1. Upgrades to key machine centers to maximize the full potential of the Company's unique production capabilities

2. Technology upgrades to bring the Company's plants and process controls to state-of-the-art standards

3. Investments in projects that will provide for a cleaner environment in the communities in which the Company operates

Mr. Turner also commented, "As aluminum continues to win share in markets seeking sustainable, high-performing material across a wide variety of applications, we believe there is a strong runway for growth in markets throughout the world. We are looking forward to supporting Arconic's experienced team with our resources and knowledge in the sector to help the Company achieve its long-term goals."

Itai Wallach, Partner at Apollo, commented, "We have tremendous respect for Arconic and its people and are fully committed to continuing Arconic's unwavering support for its employees throughout the world through a strong culture of employee engagement, respecting and protecting the collective bargaining process and by focusing on strengthening the security of the Company's pension plans, such that the Company's commitments remain secure. We look forward to partnering with the Company in its next phase of growth."

**Approvals and Timing**

The transaction is expected to close in the second half of 2023, subject to customary closing conditions, including approval by Arconic shareholders and receipt of regulatory approvals.

* * *

**Advisors**

Evercore Group L.L.C. and Goldman Sachs & Co. LLC are serving as financial advisors to Arconic, and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Arconic.

Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as legal counsel to the Apollo Funds.

Willkie Farr & Gallagher LLP and Lowenstein Sandler LLP are serving as legal counsel to Irenic.

J.P. Morgan Securities LLC and Wells Fargo Securities, LLC are acting as co-lead financial advisors to Apollo. BMO Capital Markets, Mizuho Securities USA LLC and TD Securities are also serving as financial advisors to Apollo.

\* \* \*

27. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Arconic's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

28. On June 2, 2023, Arconic filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

29. The Proxy Statement fails to provide material information concerning financial projections by Arconic management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Arconic management

provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

30. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

31. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

32. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the

residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

33. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs' Financial Analyses*

34. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for the Company; (ii) the inputs and assumptions underlying the terminal year exit EV/EBITDA multiples ranging from 5.75x to 6.75x (iii) the inputs and assumptions underlying the discount rates ranging from 9.5% to 11.5%; (iv) the standalone net present value of the NOL projections; (v) the inputs and assumptions underlying the discount rate of 5.5% as applied to the NOL projections; (vi) the Company's net debt; and (vii) the number of fully diluted outstanding shares of Arconic common stock.

35. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the range of multiples of illustrative NTM enterprise value to EBITDA of 6.00x to 7.00x; (ii) the Company's net debt for each of the fiscal years 2023 and 2024; (iii) the projected year-end number of fully diluted outstanding shares of Company common stock for each of fiscal years 2023 and 2024; and (iv) the inputs and assumptions underlying the discount rate of 12.7%.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

36. With respect to Goldman Sachs' *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for each transaction selected by Goldman Sachs for the analysis; and (ii) the inputs and assumptions underlying the reference range of EV/LTM adjusted EBITDA multiples of 6.9x to 10.1x to Arconic's LTM adjusted EBITDA; and (iii) the number of fully diluted outstanding shares of Arconic common stock as of March 31, 2023.

*Omissions and/or Material Misrepresentations Concerning Evercore's Financial Analyses*

37. With respect to Evercore's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the terminal multiples ranging from 6.0x to 7.0x (iii) the inputs and assumptions underlying the discount rates ranging from 9.5% to 11.0%; (iv) Arconic's estimated usage of NOL; and (v) the inputs and assumptions underlying the perpetuity growth rates of 1.00% to 2.00%.

38. With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for each of the companies selected by Evercore for the analysis; (ii) the inputs and assumptions underlying the multiple reference range of 6.0x to 8.0x to Arconic's estimated Adjusted EBITDA in fiscal year 2023 and 5.5x to 7.0x to Arconic's estimated Adjusted EBITDA in fiscal year 2024; (iii) the estimated net debt of the Company; (iv) the number of fully diluted shares of Arconic common stock.

39. With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the research analysts observed; and (ii) the public market trading price targets for the shares of Arconic common stock prepared and published by the research analysts.

40. With respect to Evercore's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the range of Adjusted Enterprise Value / Next Year Adjusted EBITDA multiples of 6.0x to 8.0x; (ii) the Company's net debt for each of the fiscal years 2023 and 2024; and (iii) the inputs and assumptions underlying the discount rate range of 12.0% to 15.0%.

41. With respect to Evercore's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for each transaction selected by Evercore for the analysis; and (ii) the inputs and assumptions underlying the reference range of EV/LTM adjusted EBITDA multiples of 7.0x to 10.0x to Arconic's LTM adjusted EBITDA; and (iii) the number of fully diluted outstanding shares of Arconic common stock as of March 31, 2023.

42. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement

which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

47.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

48.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Arconic within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Arconic, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Arconic, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Arconic, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations

alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

      B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

      C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

      D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 13, 2022

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*